Emma Louise HOSKINS, as Executrix of
the Estate of Richard S. Hoskins,
deceased, Libelant,

v.

EASTERN AIR LINES, INC., Pan Amer-
ican World Airways, Inc. and United
States of America, Respondents.

Arvilla S. COOK, as Administratrix of the
goods, chattels and credits of Philip
C. Cook, deceased, Libelant,

v.

EASTERN AIR LINES, INC., Pan Amer-
ican World Airways, Inc. and United
States of America, Respondents.

Nos. 65-A-903, 65-A-1163.

United States District Court
E. D. New York.

March 29, 1967.

Willkie, Farr, Gallagher, Walton, & FitzGibbon, New York City, for libelants, Emma Louise Hoskins and Arvilla S. Cook by Louis A. Craco and Daniel W. Hildebrand, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondent, Pan American World Airways, by Walter Rutherford, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for respondent, Eastern Air Lines, by Thomas McDonough, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., by Louis Greco, Atty. in charge of Admiralty Office, Dept. of Justice, New York City, by John J. Murray, New York City, of counsel, for the United States.

RAYFIEL, District Judge.

These actions were brought under the Death on the High Seas Act (46 U.S. Code, Section 761) by the personal representatives of the above-named decedents, whose death is claimed to have been caused by the wrongful acts of the respondents. The libels allege that on February 8, 1965 Hoskins and Cook, while passengers on an airliner of the respondent, Eastern Air Lines, Inc., (Eastern) known as Flight 663, died when the said plane crashed into the sea as a result of the negligence of the respondents. None of the 84 passengers and crew survived.

Prior to the commencement of the actions Letters Testamentary and Letters of Administration were issued to the libelants respectively by the Surrogates of New York and Tompkins Counties, which facts were duly pleaded in the libels which were served on Eastern on September 2, 1965 and November 10, 1965 respectively. Eastern, in its answer, admitted that the said decedents were passengers aboard said aircraft and met their death as a result of the crash. The other respondents, Pan American World Airways, (Pan American) and United States of America, (United States) denied knowledge or information sufficient to form a belief that the libelants were appointed as personal representatives of the decedents, that the latter were passengers on the said airlines, and that while in flight the plane crashed into the sea with the loss of all its passengers and crew, including the decedents herein.

Pan American's answers to the Hoskins and Cook libels were served on October 14, 1965 and December 2, 1965 respectively, and those of United States on September 21, 1965 and December 29, 1965 respectively.

Now, some 15 or more months after the service of its answers, Pan American moves pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend the same by adding the defense that the libelants lack the capacity to sue. Eastern and the United States have made applications herein for similar relief, and like applications have been made by Pan American in several other actions arising from said crash. The respondent bases its claim on the fact that the surrogate in each case failed to comply with Sections 119(2) and 144 (3) of the Surrogate's Court Act of the State of New York, and that such failure makes the decrees granting such letters

void as a matter of law. The libelants oppose the application on the grounds that (1) it is frivolous and the defense sought to be interposed is insufficient in law, and (2) it is untimely, dilatory and prejudicial to the libelants.

The respondent denies that it has acted dilatorily, claiming that it did not learn until December, 1966, when it received libelants' answers to its interrogatories, that the decedents' bodies had not been recovered and that certificates of their death had not been issued. It contends that immediately after obtaining such information it caused an investigation to be made of the records of the surrogates courts involved, and found that in issuing said Letters the surrogates had failed to comply with Sections 119(2) and 144(3), supra.

The applicable provisions of Sections 119 and 144 follow:

" § 119. Application for letters
1. * * * [A] person interested in the estate of an intestate, or interested in an action brought or about to be brought in which the intestate, if living, would be a proper party, * * * may present to the surrogate's court having jurisdiction, a petition, praying for a decree awarding letters of administration, either to him, or to another person. * * *
"2. Where a person of whose estate the surrogate would have jurisdiction if he were shown to be dead, disappears under such circumstances as to afford reasonable ground to believe that he is dead, a creditor or a person who would be interested in the estate if he were dead may present to the surrogate's court a petition praying for a decree awarding letters of administration either to him or to another person.

"(a) If the surrogate entertains the petition, he shall issue a citation to all of the parties who would be interested in the estate, if the alleged decedent were dead, and to the alleged decedent. Such citation shall be served upon the alleged decedent by publication * * *.

"(b)Upon the return of the citation, the surrogate must inquire into the facts and circumstances and take the proof thereof, before the court, and if it appears that said alleged decedent be dead and that he left no will, the surrogate may make a decree determining such fact and granting administration upon the estate.
" § 144. Probate not allowed, unless surrogate satisfied
3. If the will be of a person of whose estate the surrogate would have jurisdiction if he were shown to be dead, and who has disappeared under such circumstances as to afford reasonable ground to believe that he is dead, upon the return of the citation, the surrogate must inquire into the facts and circumstances and take the proof thereof, before the court, and if it appears that said alleged decedent be dead, the surrogate may make a decree determining such fact, and admitting the will to probate as in the case of other decedents."

*As to the claim that the libelants lack the capacity to sue.*

The respondent, as hereinabove stated, bottoms its denial of the libelants' capacity to sue on the claimed invalidity of the decrees granting said letters. More specifically, it contends that in neither case was the body of the decedent recovered and/or a certificate of his death issued and, hence, that the Letters were void because in each instance the surrogate failed to "inquire into the facts and circumstances and take the proof" as to the decedent's death before issuing the decree, as provided by Sections 119 (2) and 144(3).

■■ It may be added here that in addition to the applications hereinabove referred to the respondent has served notice of its intention to make similar applications in *all* the cases arising from the said crash, *including those in which the bodies of the decedents have been recovered,* which would appear to indicate that it does not call in question the death of Hoskins and Cook, or that the libelants qualify as persons who would be entitled

to letters. It contends chiefly, if not only, that the surrogate in each case failed to take the proof required under Sections 119(2) and 144(3). I disagree. The death of a testator or an intestate is a jurisdictional fact. In both the Hoskins and Cook cases the death of the decedent was alleged in the verified petition submitted in support of the application for letters, which provided an adequate basis for the Court's exercise of jurisdiction. The surrogate "need not take evidence, because [his] jurisdiction to make the determination drawn in question is 'in the absence of fraud or collusion, conclusively, established, by an allegation of the jurisdictional facts, contained in a written petition' ". Lapiedra v. American Surety Co., 247 N.Y. 25, 159 N.E. 710.

■ But even if that were not so it would be of no avail to the respondents; first, because Section 42 of the Act provides, in pertinent part, that objections to the decree of a surrogate may be raised only on appeal, a remedy not available to the respondent since it was not a party to that proceeding, and, second, because Section 43 of the Act provides that where the jurisdiction of the surrogate to make a decree is attacked collaterally, as it is here, *the decree is "presumptively, and, in the absence of fraud or collusion, conclusively, established,* by an allegation of the jurisdictional facts, contained in a written petition or answer, duly verified". (emphasis added) See Stolz v. New York Central Railroad Co., 7 N.Y.2d 269, 196 N.Y.S.2d 969, 164 N.E.2d 849.

■■ Except for the Berg case, unreported, 153 (98) N.Y.L.J., 5/21/65, p. 19, col. 3f., which was governed by an unpublished local rule or practice, the authorities cited by the respondent are either inapposite or factually distinguishable from the cases at bar, involving, as they do, actions or proceedings in which there was palpable fraud or misrepresentation, or in which there were alleged decedents whose absences were unexplained or inexplicable. Here, from the documentary and other facts available, much of it contained in the opposing affidavits herein, the inference appears to be conclusive, and, in fact, irresistible, that both Hoskins and Cook met their death in the crash of Eastern's Flight 663 on February 8, 1965. The instant cases, involving "disappearance[s] in the face of a fatal danger" must be distinguished from the case involving the unexplained or mysterious disappearance of an alleged decedent. See Matter of Miller, 67 Misc. 660, 662, 124 N.Y.S. 825. Pan American, having offered no proof whatsoever that actual or constructive fraud was employed by either of the libelants in the obtainment of said letters, may not now collaterally attack the decrees granting them. It is my opinion that libelants have the capacity to sue, a fact which, according to Rule 17(b) of the Federal Rules of Civil Procedure, must be determined by the law of this state.

*As to the libelants' claim that the motions are untimely, dilatory and prejudicial.*

■ The libelants controvert the respondent's claim that it did not learn until December, 1966 that the decedents' bodies had not been recovered and that certificates of their death had not been issued. They point out that immediately after the accident the Civil Aeronautics Board (CAB), acting under the authority vested in it, commenced a thorough investigation of the crash, participated in by the respondents, the Federal Aviation Agency and the Airline Pilots Association. In the course of its investigation the CAB conducted hearings which were attended by representatives of the respondents, *including their counsel.* It was during a session of those hearings, *held some two years ago,* that a document known as the Human Factors Report was introduced, containing, *inter alia,* a list of the bodies recovered. A copy of said report was made available to the respondents. It may be noted, also, that the instant application was made within the month prior to the date when libelants' claims would be barred by the statute of limitations.

It is my belief that the respondents learned or could have learned the facts upon which its application herein is based at or shortly after the said CAB hearings.

I am mindful of the fact that relief such as that sought here should be freely given, but only "when justice so requires" and I am of the opinion that the granting of the instant application would be prejudicial to the libelants.

I have considered the opinion of Surrogate Di Falco in the Matter of the Estate of Stephen R. Currier, N.Y.L.J. March 20, 1967, which was submitted to me while this memorandum was in preparation, and I find nothing therein to alter my opinion.

I am constrained, therefore, to deny the respondents motion in each case. Settle order.